

**IT IS ORDERED as set forth below:**

**Date: September 12, 2018**

_____
**Paul Baisier**
**U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| In re: | : | CASE NO. **16-72067-PMB** |
| **BARBARA JEAN KRIEG,** | : | |
| Debtor. | : | CHAPTER 7 |
| | : | |
| **NEIL C. GORDON, CHAPTER 7 TRUSTEE** | : | |
| **FOR THE ESTATE OF** | : | |
| **BARBARA JEAN KRIEG,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | **ADVERSARY PROCEEDING** |
| v. | : | |
| | : | NO. **17-5156** |
| **JOSEPH MICHAEL MERRITT** | : | |
| | : | |
| Defendant. | : | |

**ORDER (I) DENYING PLAINTIFF'S MOTION FOR**
**PARTIAL SUMMARY JUDGMENT, (II) DENYING DEFENDANT'S REQUEST FOR**
<u>**SANCTIONS, AND (III) SETTING DEADLINE FOR PROPOSED PRETRIAL ORDER**</u>

The above-referenced matter (the "Adversary Proceeding") comes before the Court on a *Motion for Partial Summary Judgment Against Defendant Joseph Michael Merritt* (Docket No. 22)(the "Motion for Partial Summary Judgment") filed by the Plaintiff-Chapter 7 Trustee ("Plaintiff").[1]  In this Adversary Proceeding, Plaintiff seeks to avoid, as a fraudulent transfer under 11 U.S.C. § 548(a)(1)(B), a transfer of an interest in real property made by the Debtor referenced above (the "Debtor") to Defendant Joseph Merritt ("Defendant") within two (2) years of December 9, 2016, the petition date of the underlying bankruptcy case (the "Petition Date").[2] This matter is a core proceeding over which the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2)(H), 1334.

In the Motion for Partial Summary Judgment, Plaintiff asserts that no material facts remain at issue regarding his constructive fraudulent transfer claim, and that he is entitled to partial summary judgment as to that claim.  Upon consideration of all pleadings, briefs, and affidavits submitted in this matter, it appears that genuine issues of material fact remain, thereby precluding partial summary judgment.  Accordingly, the Motion for Partial Summary Judgment is denied.

---

[1] Plaintiff supplemented the Motion for Partial Summary Judgment with his *Statement of Material Facts as to Which There is No Genuine Issue to be Tried* (Docket No. 23)(the "Plaintiff's Statement of Facts") and his *Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment Against Defendant Joseph Michael Merritt* (Docket No. 24)(the "Summary Judgment Memo").

[2] Plaintiff also seeks in the Motion for Partial Summary Judgment to recover and preserve the avoided transfer pursuant to 11 U.S.C. §§ 550 and 551, as well as turnover of the bankruptcy estate's interest in the net sale proceeds of the subject real property under 11 U.S.C. § 542(a).  Because the Court finds that summary judgment is not appropriate on the claim under Section 548, and because these claims depend on the success of that claim, the Motion for Partial Summary Judgment is also denied as to these additional claims.

## BACKGROUND AND PROCEDURAL HISTORY

### I.    The Property and the Transfers

Doris Sanders ("Ms. Sanders") and William Sanders ("Mr. Sanders," together with Ms. Sanders, the "Sanders") jointly owned real property located at 608 Greenwood Street, Barnesville, Georgia 30204 (the "Property"). The Sanders executed a document dated June 6, 2014 (the "First Deed") in which they transferred the Property jointly to Ms. Sanders, the Debtor, and Defendant, thereby giving the Debtor an undivided one-third (1/3) interest in the Property. The Debtor is Defendant's aunt, and Ms. Sanders is the Debtor's mother and Defendant's grandmother. The First Deed was recorded in the real property records of the Clerk of the Superior Court of Lamar County, Georgia on December 2, 2014 in Deed Book 861, Pages 270-271 (the transfer resulting from the execution, delivery, and recording of the First Deed is referred to herein as the "First Transfer).

Subsequently, the Debtor executed a document dated June 15, 2015 (the "Second Deed") in which she transferred her interest in the Property to Defendant. The Second Deed was recorded in the real property records of the Clerk of the Superior Court of Lamar County, Georgia on June 17, 2017 in Deed Book 876, Page 282 (the transfer resulting from the execution, delivery, and recording of the Second Deed is referred to herein as the "Second Transfer"). The face of the Second Deed shows that no transfer tax was paid in connection with the recording of the Second Deed.[3]   Moreover, there was no monetary exchange between the Debtor and

---

[3] Under Georgia law, a transfer tax is imposed on the conveyance of real property based on the consideration paid for the property conveyed, and is paid prior to the recording of the applicable deed or other instrument. *See* O.C.G.A. § 48-6-1. The failure to pay such tax is indicative of a lack of consideration and suggests the underlying transfer was a gift. *Flatau v. Smith* (*In re Smith*), 2007 WL 3238717, at *2 (Bankr. M.D. Ga. Oct. 30, 2017).

Defendant with regard to the Second Transfer.  Defendant sold the Property on December 15, 2016 to Zohreh McCarter for $50,000.00 (the "Sale Proceeds").

## II.    Procedural History

The Debtor filed a voluntary petition under Chapter 7 of title 11, United States Code (the "Bankruptcy Code") on the Petition Date.  Plaintiff was subsequently appointed as the trustee of the Debtor's bankruptcy estate.  Plaintiff initiated the Adversary Proceeding by filing a complaint (the "Complaint") seeking to avoid the Second Transfer under 11 U.S.C. § 548(a)(1)(A), or in the alternative, § 548(a)(1)(B).  Plaintiff also seeks in the Complaint to recover and preserve the Second Transfer under 11 U.S.C. §§ 550 and 551, as well as turnover of the bankruptcy estate's interest in the Sale Proceeds under 11 U.S.C. § 542(a).  After the Clerk's Entry of Default, Defendant filed a *Motion to Set Aside Default* (Docket No. 7), which was granted on November 1, 2017 (Docket No. 11).  On November 10, 2017, Defendant filed his *First Amendment to Defendant's Answer* (Docket No. 13-1)(the "Answer"), as well as an affidavit of Defendant (Docket No. 13-2)(the "Defendant Affidavit") and the affidavit of Margie Mathis ("Ms. Mathis"), Defendant's mother and the Debtor's sister (Docket No. 13-3)(the "Mathis Affidavit").

On January 19, 2018, the Court entered an *Order on Rule 26(f) Report* (Docket No. 19), in which it approved and made an order of the Court the parties' *Report of Rule 26(f) Conference* (Docket No. 18)(the "Rule 26(f) Report").  In the Rule 26(f) Report, the parties agreed that discovery would conclude on April 30, 2018, and that all dispositive motions would be filed within thirty (30) days of the close of discovery.  Thus, all dispositive motions were to be filed on or before May 30, 2018.  The Motion for Partial Summary Judgment, along with Plaintiff's

4

Statement of Facts and Summary Judgment Memo, were filed on June 8, 2018, nine (9) days after the deadline for such pleadings.[4]

Plaintiff argues in the Summary Judgment Memo that there is no genuine issue of material fact that the Second Transfer was a transfer of the Debtor's one-third (1/3) interest in the Property.  Plaintiff also contends that the Debtor received less than reasonably equivalent value for the Second Transfer, as such transfer was not for any monetary consideration whatsoever.  Lastly, Plaintiff asserts that the Debtor was insolvent on the date of the Second Transfer, or was rendered insolvent by such transfer.

Defendant filed his *Response to Plaintiff's Motion for Summary Judgment* (Docket No. 25-1)(the "Response") and *Response to Plaintiff's Statement of Material Facts* (Docket No. 26) on June 29, 2018, as well as an affidavit by the Debtor (Docket No. 25-2)(the "Debtor Affidavit").  In the Response, Defendant asserts that the Second Transfer is not subject to avoidance under Section 548(a)(1)(B).  First, Defendant contends that Plaintiff has failed to prove that the Debtor was insolvent at the time of the Second Transfer, or was rendered insolvent by the Second Transfer.[5]  Second, Defendant argues that the Debtor received reasonably

---

[4] For discussion regarding the timeliness of the Motion for Partial Summary Judgment, *see* Part I, *infra*.

[5] As to this argument, Defendant argues that Plaintiff has presented no evidence regarding the Debtor's financial condition at the time of the Second Transfer.  Instead, Defendant contends that Plaintiff, in the Summary Judgment Memo, merely cites to the Debtor's financial condition on the Petition Date, along with the Debtor's statement that she did not transfer any property outside the ordinary course of her financial affairs within two (2) years of the Petition Date, to create an inference that the Debtor must have also been insolvent on the date of the Second Transfer, nearly a year and one-half (1 ½) prior to the Petition Date.

5

equivalent value for the Second Transfer.[6]  Third, Defendant asserts that the Debtor's "interest" in the Property at the time of the Second Transfer would have been excluded from her bankruptcy estate at the time of such transfer, as the Debtor held such interest in implied trust for Defendant.  More specifically, Defendant contends that the Debtor, by virtue of a mistake that occurred in the First Transfer, merely held bare legal title to the Property in an implied trust for the benefit of Defendant.[7]  Accordingly, Defendant contends that Plaintiff has failed to satisfy the elements of his Section 548(a)(1)(B) claim.  Plaintiff did not file a reply brief to address Defendant's legal and factual allegations raised in the Response.[8]

## LEGAL ANALYSIS

The Debtor's and Defendant's relationship to the Property and the facts surrounding the First Transfer and Second Transfer are disputed.  Plaintiff asserts that the Debtor owned an undivided one-third (1/3) interest in the Property by virtue of the First Transfer, that she received less than reasonably equivalent value when she transferred this interest to Defendant by making the Second Transfer within two (2) years of the Petition Date, and that the Debtor was insolvent at the time of the Second Transfer or became insolvent as a result of the Second Transfer.

---

[6]  With regard to reasonably equivalent value, Defendant asserts that the caregiving services he provided to Ms. Sanders constitute value to the Debtor, as she and her family were alleviated from the financial burden of providing such services.  Further, Defendant asserts that such services were rendered in exchange for the Second Transfer, and that the value of those services are the reasonable equivalent of the value of the Property.  Defendant also states that Plaintiff has failed to produce evidence of the Property's value on the date of the Second Transfer for the purpose of determining whether the Debtor received reasonably equivalent value for the Second Transfer.

[7] Defendant contends that because he provided caregiving services to Ms. Sanders as consideration for the First Transfer, and because the Debtor was never intended to receive an interest in the Property, either an implied purchase money resulting trust or constructive trust arose upon the First Transfer.

[8] Plaintiff is not required to file a reply to the Response under the local rules of this Court.  *See* BLR 7007-1(d)("A reply by the movant shall be permitted, but it is not necessary for the movant to file a reply as a routine practice.").  However, where a defendant—like the Defendant here—raises factual allegations and legal theories not addressed in a plaintiff's motion for summary judgment, the filing of a reply to respond to such assertions would appear to not only be prudent, but necessary.

Defendant, however, proffers facts not referenced or refuted by Plaintiff in any of his pleadings, including a reply brief (which was never filed).  Specifically, Defendant contends that the Debtor was never intended to have an interest in the Property, but that through an error, the Debtor was inadvertently transferred an interest in the Property through the First Transfer.

Defendant cites to the Mathis Affidavit, Debtor Affidavit, and Defendant Affidavit in support of the factual circumstances surrounding the First Transfer and Second Transfer. According to the Debtor, Ms. Mathis, and Defendant, Ms. Sanders sustained an injury in 2011 that caused her to be unable to care for herself.  [Debtor Aff'd ¶ 5; Defendant Aff'd ¶ 3; Mathis Aff'd pg. 1].  At this time, Ms. Sanders resided at the Property.  [Debtor Aff'd ¶ 6; Defendant Aff'd ¶ 3].  Defendant was asked if he would move into the Property to care for Ms. Sanders, rather than having Ms. Sanders' family pay for caregiving services.  [Debtor Aff'd ¶¶ 7-8; Defendant Aff'd ¶ 3; Mathis Aff'd pg. 1].  Defendant agreed, and he subsequently moved into the Property and cared for Ms. Sanders until her death in 2015.  [Debtor Aff'd ¶ 10; Mathis Aff'd pgs. 1-2].  As part of this arrangement, Ms. Sanders and her family agreed that Defendant would be deeded the Property as consideration for his caregiving services rendered on behalf of Ms. Sanders, and that Defendant would receive full ownership of the Property upon Ms. Sanders' death.  [Debtor Aff'd ¶¶ 8-10; Defendant Aff'd ¶¶ 3, 5; Mathis Aff'd pgs. 1-2].  An attorney, Lynn Wilson ("Ms. Wilson"), was hired to prepare the documents to transfer the Property from the Sanders to Ms. Sanders and Defendant for the First Transfer.[9]  [Debtor Aff'd ¶ 11; Defendant Aff'd ¶ 4; Mathis Aff'd pg. 1].

---

[9] Ms. Wilson, according to the Defendant Affidavit, is now deceased.  [Defendant Aff'd ¶ 4].

However, rather than transferring the Property solely to Ms. Sanders and Defendant, the document prepared by Ms. Wilson (the First Deed) also included the Debtor's name, such that the First Transfer resulted in the Property being transferred jointly to Ms. Sanders, Defendant, and the Debtor.  Defendant asserts that the First Transfer was contrary to the parties' intentions, and was caused by Ms. Wilson's error in drafting the First Deed.  In the Debtor Affidavit, the Debtor states that she did not realize she was included on the First Deed until Ms. Sanders passed away in 2015, and that the interest she obtained in the Property by the First Transfer was not part of the agreement between her family and Defendant.  [Debtor Aff'd ¶¶ 12-14].[10]  The Debtor asserts that she never expected nor intended to receive an interest in the Property.  [Debtor Aff'd ¶ 18].  The Debtor also states that she did not pay any consideration for the First Transfer, and that she never contributed anything towards the maintenance of the Property, including mortgage payments, tax deductions, or business expenses related to the Property.  [Debtor Aff'd ¶¶ 15-17, 19].  Rather, it was the Debtor's belief that Defendant contributed valuable services to Ms. Sanders and her family in exchange for the First Transfer, as he provided caregiving services that

---

[10] Under Georgia law in effect at the time of the First Transfer, a deed to lands must be delivered to the grantee to have legal effect.  O.C.G.A. § 44-5-30 (2014)(A deed to lands "shall delivered to the purchaser or his or her representative and be made on a good or valuable consideration").  With regard to delivery of a deed, "[a] deed is delivered in the sense of the law when the person who makes it puts it in the possession of the person to whom it is made with the intention that it shall pass title to such person."  2 Daniel F. Hinkel, *Pindar's Georgia Real Estate Law and Procedure* § 19–88 (7th ed.).  In light of the Debtor's assertion that she did not know she was included on the First Deed until Ms. Sanders' death, it is possible that the First Deed was never delivered to the Debtor in accordance with Georgia law, which would render the transfer of an interest in the Property to the Debtor pursuant to the First Deed invalid.  A failure to deliver the First Deed to the Debtor may also preclude a fraudulent transfer action, as the Debtor may not have had an interest in the Property under 11 U.S.C. § 548(a)(1) if the First Transfer is invalid for failure of delivery.  *See* 11 U.S.C. § 548(a)(1).  Section 541(a) is utilized by courts to determine what constitutes "an interest of the debtor in property" under Section 548.  *Matter of Dunston*, 566 B.R. 624, 631 (Bankr. S.D. Ga. 2017).  Thus, "an interest of the debtor in property" under § 548(a)(1) includes "property that would have been part of the [bankruptcy] estate had it not been transferred before the commencement of bankruptcy proceedings."  *Id.* (quoting *Begier v. Internal Revenue Serv*., 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990)).  Here, if the First Deed was not delivered to the Debtor, the Debtor may never have had a legal interest in the Property and thereby may lack "an interest in property" that could be the subject of a Section 548 action.

the Debtor and her family would have been responsible for providing had Defendant not moved in with Ms. Sanders. [Debtor Aff'd ¶ 20].

When Ms. Sanders passed away in 2015, the Debtor realized the error on the First Deed and executed the Second Deed to correct the error. [Debtor Aff'd ¶¶ 21-24]. The Debtor contends that she did not execute the Second Deed with the intent to hinder, delay, or defraud any of her creditors, or with the intent to hide her assets. [Debtor Aff'd ¶ 25]. Rather, the Debtor states that the Second Transfer was executed solely to correct the error with the First Deed. [Debtor Aff'd ¶ 26].

## I.     Untimeliness of the Motion for Partial Summary Judgment

In the Response, Defendant notes that the Motion for Partial Summary Judgement was filed nine (9) days after the deadline for such a motion, and argues that it should be denied on that basis alone.

Courts have broad discretion to consider untimely motions for summary judgment. *See Wood v. Florida Atlantic Univ. Bd. of Trustees*, 432 Fed.Appx. 812, 815 (11th Cir. 2011); *Enwonwu v. Fulton–Dekalb Hosp. Auth.*, 286 Fed.Appx. 586, 595 (11th Cir. 2008). In the Eleventh Circuit, a court "may consider an otherwise untimely motion if, among other reasons, doing so 'would be the course of action most consistent with the interest of judicial economy.'" *Thomas v. Kroger Co.*, 24 F.3d 147, 149 (11th Cir. 1994)(quoting *Matia v. Carpet Trans., Inc.*, 888 F.2d 118, 119 (11th Cir. 1989)). Hence, in deciding whether to permit an untimely motion for summary judgment, courts must evaluate whether deciding the motion would promote judicial economy rather than proceeding to trial. *In Matter of Camp*, 2016 WL 3135668, at *2 (Bankr. N.D. Ga. May 17, 2016).

Under this Court's broad discretion to consider untimely motions for summary judgment, the Court has determined that it will consider the Motion for Partial Summary Judgment. Although such motion was untimely under the Rule 26(f) Report, it was filed only nine (9) days after the April 30, 2018 deadline, and thus did not result in substantial prejudice to Defendant. The Court also finds that considering the substance of the Motion for Partial Summary Judgment, rather than denying it outright for untimeliness, promotes judicial economy. Although the Motion for Partial Summary Judgment is denied for the substantive reasons discussed *infra*, consideration of the Motion for Partial Summary Judgment should assist the parties in narrowing and focusing the issues for trial, and might also assist them in reaching an amicable settlement. The Court does, however, reserve the right to assess the untimeliness of the Motion for Partial Summary Judgment in connection with any application filed by Plaintiff for compensation in the underlying bankruptcy case.

## II.     Summary Judgment Standard

Summary judgment may be granted pursuant to Federal Rule of Civil Procedure 56, made applicable herein by Federal Rule of Bankruptcy Procedure 7056, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).[11]  In deciding a motion for summary judgment, the court "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).  A genuine factual dispute exists "if the evidence is such that a

---

[11] In determining the materiality of facts, "the substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

reasonable [factfinder] could return a verdict for the nonmoving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 248, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The initial burden of proving the absence of dispute as to any material fact rests with the moving party. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). In meeting this initial burden, the moving party must identify "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (internal quotations omitted). Once the party moving for summary judgment has identified those materials demonstrating the absence of a genuine issue of material fact, the non-moving party cannot rest on mere denials or conclusory allegations, but must go beyond the pleadings and designate, through proper evidence such as by affidavits or personal knowledge or otherwise, specific facts showing the existence of a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Johnson v. Fleet Finance Inc.*, 4 F.3d 946, 948-49 (11th Cir. 1993); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993). Further, all reasonable doubts should be resolved in favor of the non-moving party, and "[i]f reasonable minds could differ on any inferences arising from undisputed facts, summary judgment should be denied." *Twiss v. Kury*, 25 F.3d 1551, 1555 (11th Cir. 1994)(citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir. 1985)).

### III.      11 U.S.C. § 548(a)(1)(B)

Under 11 U.S.C. § 548(a)(1)(B),[12] a trustee may avoid (1) a transfer (2) of an interest of the debtor in property (3) made within two (2) years prior to the petition date if the debtor: (4) received less than reasonably equivalent value for that transfer and the debtor (5) was insolvent at the time of the transfer or became insolvent as a result of the transfer. *In re Ojemeni*, 2008 WL 7870966, at *2 (Bankr. N.D. Ga. June 13, 2008). Plaintiff bears the burden of proving each element by a preponderance of the evidence. *In re Knight*, 473 B.R. 847, 849 (Bankr. N.D. Ga. 2012). Thus, to succeed on his summary judgment motion, Plaintiff must show that no genuine issues of material fact exist as to each element of his Section 548(a)(1)(B) claim.

It does not appear that the parties dispute the first and third elements above: that there was a transfer that occurred within two (2) years of the Petition Date. Defendant does not dispute that the Second Transfer was in fact a "transfer" under 11 U.S.C. § 548(a)(1)(B). Further, the Second Transfer occurred within two (2) years of the Petition Date, as the Second Deed is dated June 15, 2015 and was recorded on June 17, 2015. Thus, the only elements that remain in dispute are whether: (i) the Second Transfer constituted a transfer of an interest of the Debtor in property; (ii) the Debtor received less than reasonably equivalent value for the Second

---

[12] 11 U.S.C. § 548 provides, in relevant part:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, . . . that was made . . . on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer . . . ; and
>
> (ii)(I) was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer . . . ;

11 U.S.C. § 548(a)(1)(B)(i)-(ii)(I).

Transfer; and (iii) the Debtor was insolvent at the time of the Second Transfer or was rendered insolvent by the Second Transfer.

Although the Mathis Affidavit and Defendant Affidavit were attached to the Answer, Plaintiff failed to address any of the facts alleged in them in the Summary Judgment Memo. Moreover, having filed no reply, Plaintiff failed to address the arguments raised in the Response. Specifically, Plaintiff failed to controvert Defendant's allegations with regard to the Debtor's interest in the Property, and whether such interest is subject to avoidance under Section 548. Thus, there appears to be a dispute as to material facts regarding the Debtor's interest in the Property and whether such interest is subject to avoidance under 11 U.S.C. § 548(a)(1)(B). Moreover, Plaintiff has failed to carry his burden to prove the insolvency element of Section 548(a)(1)(B). By contrast, no genuine issue of fact exists as to reasonably equivalent value—the facts alleged by Plaintiff and Defendant show that the Debtor received less than reasonably equivalent value for the Second Transfer, and that if any value was provided, it was not in exchange for the Second Transfer.

### A.   Interest of the Debtor

In analyzing the Trustee's Section 548 fraudulent transfer claim, the Court must determine, as a threshold issue, whether the Second Transfer constituted a transfer of an interest of the Debtor in the Property. *Matter of Dunston*, 566 B.R. 624, 631 (Bankr. S.D. Ga. 2017). "[C]ourts generally look to the Code's definition of 'property of the estate' when determining what constitutes 'an interest of the debtor in property.'" *Id*. Pursuant to 11 U.S.C. § 541(a)(1), "property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Property of the estate does not, however, include "property in

13

which a debtor holds only legal title and not an equitable interest." *Wallace v. McFarland* (*In re McFarland*), 619 Fed.Appx. 962, 967 (11th Cir. 2015)(citing 11 U.S.C. § 541(d)).  Similarly, "property the debtor holds only in trust for another is not an 'interest of the debtor in property' under § 548(a)(1)." *Id.*

Here, Defendant argues that the First Transfer conveyed only bare legal title to a one-third (1/3) interest in the Property to the Debtor.  Consequently, Defendant asserts that the First Transfer resulted in the Debtor merely holding her interest in the Property in an implied trust for the benefit of Defendant.  Because property held in trust by the Debtor is not property of the estate, Defendant contends that the Debtor's implied trust interest in the Property cannot be subject to a Section 548 claim.

Courts look to state law to determine the nature of a debtor's interest in property under Section 541.  *In Matter of High-Top Holdings, Inc.*, 564 B.R. 784, 793 (Bankr. N.D. Ga. 2017)("It is well-established that state law determines interests in property.").  Under Georgia law, trusts are either express or implied.  *Bullard v. Bullard*, 214 Ga. 122, 123, 103 S.E.2d 570 (1958).  "An implied trust results from the fact that one person's money has been invested in land, and the conveyance taken in the name of another.  It is a mere creature of equity." *Id.* (internal quotations and citations omitted).  Implied trusts are further broken down into two (2) categories under Georgia law: resulting trusts and constructive trusts.  *See* O.C.G.A. § 53-12-2(5).

### (i) Purchase Money Resulting Trust

One form of resulting trust that Defendant argues applies here is a purchase money resulting trust.  A purchase money resulting trust "is a resulting trust implied for the benefit of

the person paying consideration for the transfer to another person of legal title to real or personal property." O.C.G.A. § 53–12–131(a).  To establish a purchase money resulting trust, the alleged beneficiary must either show "(1) that the party contributed purchase money at or before the time of purchase or (2) an agreement at the time of purchase for the party claiming the benefit to contribute purchase money so as to create a resulting trust."  *In re McFarland*, 619 Fed.Appx at 968.  Such a showing must be proved by clear and convincing evidence.  *In Matter of High-Top Holdings, Inc.*, 564 B.R. at 794.

Valuable consideration for a purchase money resulting trust may come in the form of "money, property, or services, or an equivalent . . . [as long as such consideration is] furnished by the alleged beneficiary of the resulting trust."  85 Am. Jur. Proof of Facts 3d 221 § 7 (2005); *See* Restatement (Third) of Trusts § 9 (2003)(stating that the requirements for purchase money resulting trusts "apply regardless of whether the purchase price is paid with money or other property . . .").  Additionally, "the party claiming the benefit of a purchase money resulting trust must show with certainty what part of the total purchase price he paid."  *In re McFarland*, 619 Fed. Appx. at 969 (quoting *Brown v. Leggitt*, 226 Ga. 366, 368, 174 S.E.2d 889, 891 (1970))(alteration omitted).

Defendant contends that at the time of the First Transfer, the Sanders intended for Defendant to have sole title to the Property in exchange for his caring for Ms. Sanders until her death.  Defendant asserts that such intent was partially, yet erroneously, effectuated when the Debtor received bare legal title to the Property as a result of the First Transfer.  Defendant asserts that he provided services as consideration for the First Transfer, and when Ms. Wilson created

the First Deed that inadvertently transferred a portion of Defendant's interest in the Property to the Debtor, a purchase money resulting trust arose in favor of Defendant.

Based upon the factual assertions raised by Defendant and uncontroverted by Plaintiff, there appears to be evidence that may support the existence of purchase money resulting trust in this case. Although Defendant and Debtor admit that no money was paid for the First Transfer, Defendant has presented evidence through his own declarations and those of the Debtor that show he provided caregiving services in exchange for the First Transfer. Defendant contends that, in exchange for him moving into the Property to care for Ms. Sanders, the Debtor's and Defendant's family agreed that title to the Property should pass solely to Defendant upon Ms. Sanders' death. Defendant asserts that such agreement was made at the time of the First Transfer, and that the furnishing of caregiving services to Ms. Sanders constituted valuable consideration to support the First Transfer. Though it is unclear when Defendant began rendering the services, construing the statements of the Debtor and Defendant in the light most favorable to Defendant, there exists some evidence of an agreement at the time of the First Transfer that Defendant would furnish the full purchase price of the Property for the First Transfer by rendering caregiving services to Ms. Sanders. Accordingly, there exist issues of fact as to whether a purchase money resulting trust arose in Defendant's favor at the time of the First Transfer in light of the uncontroverted factual circumstances surrounding such transfer.

### (ii) Constructive Trust

A constructive trust under Georgia law is defined as "a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established

16

principle of equity." O.C.G.A. § 53–12–132(a). Put differently, a constructive trust is employed by courts to prevent unjust enrichment. *In re McFarland*, 619 Fed.Appx. at 973 (quoting *Lee v. Lee*, 260 Ga. 356, 392 S.E.2d 870, 871 (1990)). "A constructive trust arises not from the intent of the parties, but by equity with respect to property acquired by fraud, *or although acquired without fraud where it is against equity that the property should be retained by the one who holds it*." *Aetna Life Ins. Co. v. Weekes*, 241 Ga. 169, 172, 244 S.E.2d 46 (1978)(emphasis added). Courts employ constructive trusts because "[i]t is inherently unjust to allow one with a legal interest in a piece of property a windfall recovery when the beneficial interest should flow to another." *In re Francois*, 525 B.R. 531, 534 (Bankr. N.D. Ga. 2015)(internal quotations and citations omitted).

Courts are generally reluctant to impose constructive trusts on property of the bankruptcy estate, as the Bankruptcy Code "creat[es] a distribution scheme that is both mandatory and strict—[it] presumes that [a] debtor's limited resources are to be distributed equally among the creditors in the manner prescribed by Congress." *Id.* at 535. Because a constructive trust "thwarts the principle of ratable distribution underlying the Bankruptcy Code," bankruptcy courts imply such trusts sparingly. *Id.* (quoting *In re Chambers*, 500 B.R. 221, 230 (Bankr. N.D. Ga. 2013)).

Based upon the factual assertions in the Response and the Debtor Affidavit, Defendant Affidavit, and Mathis Affidavit, there is evidence that may support the existence of an implied constructive trust. As noted *supra*, a constructive trust is implied to prevent unjust enrichment and, if the property is not acquired by fraud, where it would be against principles of equity for the individual who holds the property to retain such ownership. *Aetna Life Ins. Co. v. Weekes*,

17

241 Ga. at 172.  Here, the Debtor asserts that she paid no consideration for her interest in the Property, nor has she contributed any funds or services towards maintenance of the Property, including mortgage payments.  The Debtor also maintains that she has not taken income tax deductions or claimed any business expenses with regard to the Property.  Conversely, both Defendant and the Debtor contend that Defendant provided significant services in exchange for the First Transfer.  Defendant asserts that, per his grandmother's wishes and his family's agreement, he was intended to obtain sole title to the Property upon her death.  Instead, an error in the First Deed thwarted such an agreement.

In light of these unaddressed factual assertions by Defendant, there may be sufficient evidence to support the finding of a constructive trust.  Both the Debtor and Defendant agree that the Debtor was never intended to receive an interest in the Property, nor did she provide consideration for her one-third (1/3) interest in the Property or make contributions towards maintenance of the Property.  Rather, it was Ms. Sanders' and her family's intent that Defendant receive full ownership interest in the Property upon Ms. Sanders' death in exchange for his provision of caregiving services.  Accordingly, an implied constructive trust may have arisen at the time of the First Transfer to prevent unjust enrichment by the Debtor to Defendant's detriment.

At the summary judgment stage, Plaintiff has the burden of establishing that there is no genuine issue of material fact as to each element of his claim.  Plaintiff also has the burden to prove all of the elements of his claim by a preponderance of the evidence.  As to this element— transfer of "an interest of the debtor in property" —the parties appear to dispute whether the Debtor held an interest in the Property sufficient to support an avoidance claim under 11 U.S.C.

§ 548.  Plaintiff merely states in his pleadings that the Second Transfer was a transfer of the Debtor's interest in property within two (2) years of the Petition Date, and that the Debtor owned a one-third (1/3) interest in the Property.  Defendant argues that the Debtor obtained a bare legal interest in the Property by virtue of the First Transfer, and that the Debtor held her interest in the Property subject to an implied trust (either a purchase money resulting trust or constructive trust) for the benefit of the Defendant.  Plaintiff did not address these issues in his Summary Judgment Memo, and failed to file a reply brief to address Defendant's arguments on this point.  Because issues of fact remain with regard to the existence of an implied trust due to the uncontroverted factual circumstances surrounding the First Transfer, Plaintiff has not carried his burden to show that the Second Transfer was a transfer of "an interest of the debtor in property," thereby precluding summary judgment at this time.  The existence of an implied trust is therefore best left for resolution at trial.[13]

### B.  Reasonably Equivalent Value

Reasonably equivalent value is analyzed through a three-part test: "(i) whether the debtor received value; (ii) whether the value received was in exchange for the property transferred; and (iii) whether the value was reasonably equivalent to the value of the property transferred."  *In re Knight*, 473 at 850 (citing *Pummill v. Greensfelder, Hemker & Gale* (*In re Richards & Conover Steel, Co*.) 267 B.R. 602, 612 (8th Cir. BAP 2001)).  Where the subject transfer was made to an

---

[13] Because Defendant has not moved for summary judgment, the Court does not need to make a final determination as to whether an implied trust existed.  Rather, the Court only needs to determine that Plaintiff did not carry his burden by showing that no genuine dispute of material fact exists as to each element of his fraudulent transfer claim.  Although courts invoke implied trusts sparingly, at this stage of the Adversary Proceeding, the Court is unable to preclude the possibility of the availability of such a trust under the facts put forth by Defendant.

19

insider, courts scrutinize the transaction more closely.  *In re McFarland*, 619 Fed.Appx at 975 (citing 11 U.S.C. § 101(31)(A)(i) which defines "insider" as a "relative of the debtor").

Section 548(d) defines "value" under that code section as "property, or satisfaction or securing of a present or antecedent debt of the debtor," excluding "an unperformed promise to furnish support to the debtor or to a relative of the debtor."  11 U.S.C. § 548(d)(2)(A).  The term "value" is is broadly construed by courts, with the Eleventh Circuit holding "that value is something that confers an economic benefit upon the debtor either directly or indirectly." *In re White*, 559 B.R. 787, 800 (Bankr. N.D. Ga. 2016)(quoting *PSN Liquidating Trust v. Intelsat Corp.* (*In re PSN USA, Inc.*), 615 Fed.Appx. 925, 928 (11th Cir. 2015))(internal quotations omitted).  With regard to whether the value received was "in exchange" for the transfer, "[a] transfer is in exchange for value if one is the quid pro quo of the other."  *In re Knight*, 473 B.R. at 850 (citation omitted).

Plaintiff argues that the Second Transfer was not made for reasonably equivalent value because there was no monetary consideration to support the Second Transfer, nor was any transfer tax paid as part of the Second Transfer according to the face of the Second Deed. Defendant contends that the Debtor received reasonably equivalent value for the Second Transfer in the form of the caregiving services Defendant rendered to the Debtor's mother, Ms. Sanders. Defendant notes that, in the Debtor Affidavit, the Debtor alleges that she received a benefit from Defendant in that he cared for Ms. Sanders.  In turn, the Debtor and her family were relieved from having to shoulder the economic burden of providing caregiving services for Ms. Sanders. Defendant contends that being relieved from having to provide for Ms. Sanders constitutes reasonably equivalent value for the Second Transfer.  Defendant also argues that Plaintiff failed

to provide evidence of the value of the Property on the date of the Second Transfer; rather Plaintiff merely asserts that the Property sold nearly a year and one half (1 ½) after the Second Transfer for $50,000.00.  Thus, Defendant contends that Plaintiff has not presented evidence to show that the Debtor received less than reasonably equivalent value for the Second Transfer; rather, the evidence shows that the Debtor received substantial value in exchange for the Second Transfer.

Upon review of the pleadings and affidavits filed by the parties, the Court finds that no "value" was given by Defendant to the Debtor in exchange for the Second Transfer.  First, although Defendant's rendering of caregiving services to Ms. Sanders may constitute "value," such services do not constitute "value" to the Debtor.  Although it appears that Defendant conferred a benefit upon Ms. Sanders in rendering caregiving services, such services did not confer a benefit sufficient to constitute "value" *to the Debtor* of the type required in this analysis.

The Debtor contends that Defendant's provision of care for Ms. Sanders relieved her and her family from having to provide the same caregiving services.  Though it may be true that the Debtor may have felt a moral obligation to pay for her mother's caregiving expenses, it does not appear that the Debtor had any legal obligation to provide such care.[14]  Consequently, the financial relief provided to the Debtor and her family by Defendant's provision of caregiving services does not constitute "value" to the Debtor.  Even if the Debtor had intended to furnish the same caregiving services that were ultimately rendered by Defendant, "satisfaction of such moral

---

[14] Georgia's filial responsibility statute, O.C.G.A. § 36-12-3, only applies the in case of pauperism and provides, in relevant part, that "[t]he father, mother, or child of any pauper contemplated by Code Section 36–12–2, if sufficiently able, shall support the pauper."  O.C.G.A. § 36-12-3.  Defendant does not contend that Ms. Sanders, during the time Defendant cared for her, was a pauper within the meaning of O.C.G.A. § 36-12-2.  Accordingly, O.C.G.A. § 36-12-3 does not apply here.

obligation does not provide an 'economic' benefit to the Debtor." *Matter of Dunston*, *supra*, 566 B.R. at 637 (explaining that a debtor receives no economic benefit by paying for an adult child's college tuition where the debtor had no legal obligation to do so). Defendant and the Debtor also acknowledge that no monetary consideration was paid by Defendant to the Debtor for the Second Transfer. As a result, it does not appear that the Debtor received any "value," direct or indirect, from Defendant's caregiving assistance to Ms. Sanders.[15]

Second, even if the Court found that the caregiving services rendered for Ms. Sanders constituted "value" to the Debtor, it is clear that such "value" was not received *in exchange for* the Second Transfer. As noted above, to constitute reasonably equivalent value, the transfer must be in exchange for the value given—one must be the quid pro quo of the other. *In re Knight*, 473 B.R. at 850. Here, Defendant explains, and the Debtor Affidavit, Mathis Affidavit, and Defendant Affidavit all contend, that the basis for the *First Transfer* was to compensate Defendant for the caregiving services he would render for Ms. Sanders.[16] However, the basis for the *Second Transfer*, the subject of this Adversary Proceeding, was "solely for the purpose of correcting what should have happened with the [First Transfer]." [Debtor Aff'd ¶ 26]. The Debtor does not allege that the Second Transfer was to compensate Defendant for services (that had already been rendered on behalf of a third-party); rather, the Debtor states that the Second Transfer was executed solely to correct the alleged error in the First Transfer. Hence, even if the

---

[15] Based upon the facts surrounding the Debtor's and Defendant's family arrangement regarding the First Transfer, it is clear that the Debtor did not receive even an indirect benefit by Defendant's care for Ms. Sanders, as she was under no legal obligation to provide such services.

[16] *See* Mathis Aff'd pgs. 1-2; Defendant Aff'd ¶¶ 3-5; Debtor Aff'd ¶¶ 7-10.

Court were to find that Defendant's caregiving services to Ms. Sanders constitute "value" to the Debtor, it is clear that such "value" was not given in exchange for the Second Transfer.

In light of the discussion *supra*, it is also clear that a one-third (1/3) interest in the Property was not the reasonable equivalent of any "value" given (to the extent any such "value" was given). Because the Court has found that no "value," within the meaning of Section 548(d), was given to the Debtor for the Second Transfer, it must also find that a one-third (1/3) interest in the Property is not the reasonable equivalent of this non-existent "value."[17]

In sum, the Court finds that no "value" was given "in exchange for" the Second Transfer, such that the value of a one-third (1/3) interest in the Property is not the reasonable equivalent of the "value" given by Defendant. Thus, Plaintiff has demonstrated an absence of material factual dispute regarding the lack of reasonably equivalent value for the Second Transfer under 11 U.S.C. § 548(a)(1)(B)(i).

### C. Insolvency

The Bankruptcy Code defines "insolvent" to mean the:

> [F]inancial condition such that the sum of [an] entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—(i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under section 522 of this title . . .

11 U.S.C. § 101(32). Under this "balance sheet test," a debtor's assets and liabilities are tallied to determine whether her debts exceed her assets. *Mellon Bank, N.A. v. Official Comm. of Unsecured Creditors of R.M.L., Inc.* (*In re R.M.L., Inc.*), 92 F.3d 139, 154-55 (3rd Cir. 1996). "For purposes of § 548, solvency is measured at the time the debtor transferred value, not at

---

[17] "A precise calculation of the exchanged values is unnecessary. . . if there is sufficient evidence to conclude the values are plainly not equivalent.*" In re Diplomat Const., Inc.*, 2013 WL 5591918, at *5 (Bankr. N.D. Ga. Aug. 6, 2013).

23

some later or earlier time." *Id*. at 154. Unlike preference actions under Section 547, fraudulent transfers under Section 548 are not subject to the ninety (90) day insolvency presumption prior to the petition date. *In re Holloway*, 2015 WL 1545376, at *9 (Bankr. S.D. Ga. Mar. 31, 2015).

With regard to insolvency, Plaintiff argues that the Debtor's insolvency is demonstrated by the fact that the Second Transfer occurred approximately eighteen (18) months prior to the Petition Date, and, on her bankruptcy disclosure forms, the Debtor scheduled total debts of $140,486.62 and total assets of $107,883.96, minus listed exemptions of $11,559.55. Additionally, Plaintiff contends that the Debtor's financial condition did not change substantially between the date of the Second Transfer and the Petition Date.[18] Other than the loss of the value of her one-third (1/3) interest in the Property as a result of the Second Transfer, Plaintiff argues that the Debtor's assets did not change substantially between the date of the Second Transfer (June 2015) and the Petition Date (December 9, 2016). With regard to the Debtor's liabilities, Plaintiff notes that the Debtor scheduled total debts of $140,486.62, of which $100,159.73 were scheduled as secured debts and $40,326.89 were unsecured debts. Plaintiff further notes that eight (8) unsecured claims have been filed in the Debtor's main bankruptcy case, totaling

---

[18] To this point, Plaintiff notes that, in response to Question 18 on the Statement of Financial Affairs (Main Bankruptcy Case, Docket No. 1, pg. 15), the Debtor stated that she did not sell, trade or transfer any property to anyone within two (2) years before she filed for bankruptcy, other than property transferred in the ordinary course of her business or financial affairs. This, of course, does not exclude the possibility of a material amount of ordinary course transfers. Plaintiff also notes that the Debtor failed to disclose the Second Transfer in her original bankruptcy petition and documents.

24

$30,535.62.[19]  Hence, Plaintiff contends that the Debtor's liabilities clearly exceeded her non-exempt assets as of the date of the Second Transfer, or alternatively, that the Second Transfer caused her liabilities to exceed her non-exempt assets.

Defendant argues that Plaintiff offered no evidence of the Debtor's insolvency on the date of the Second Transfer, or that such transfer rendered her insolvent.  More specifically, Defendant contends that Plaintiff has not presented any evidence as to the financial condition of the Debtor on the date of the Second Transfer.  Defendant asserts that the only evidence Plaintiff presents in support of his insolvency argument is an inference that, because the Debtor was insolvent on the Petition Date and stated that her assets have not changed substantially since the date of the Second Transfer, the Debtor must have also been insolvent on the date of the Second Transfer, which occurred over a year and a half (1 ½) prior to the Petition Date.

Plaintiff has failed to carry his burden of proof in establishing that the Debtor was insolvent at the time of the Second Transfer, or was rendered insolvent by the Second Transfer, principally because he has failed to point to evidence regarding the Debtor's financial condition *at the time of the Second Transfer*.  Rather, Plaintiff relies on the Debtor's scheduled assets and liabilities as of the Petition Date (which occurred nearly a year and a half (1 ½) *after* the Second Transfer) and the Debtor's statement that she did not dispose of any property within the two (2) years prior to the Petition Date to create an inference that the Debtor was insolvent on the date of the Second Transfer.  Essentially, Plaintiff argues that because the Debtor was insolvent

---

[19] Plaintiff further notes that Discover Bank filed Claim No. 1-1 in the amount of $8,302.17, and that such claim indicates that the Debtor opened her Discover account on July 1, 2014 (the "Discover Account").  Plaintiff also notes that Wells Fargo Bank filed Claim No. 5-1 in the amount of $10,163.10, and that such claim indicates that the Debtor opened her Wells Fargo revolving credit line on January 1, 2015 (the "Wells Fargo Account").  Although Plaintiff does not explicitly state how these specific claims relate to his insolvency argument, it appears that both the Discover Account and Wells Fargo Account were opened by the Debtor prior to the Second Transfer.  This fact, however, says nothing about *the amount* of such obligations on the relevant date.

on the Petition Date, and because the Debtor's assets did not substantially change between the date of the Second Transfer and the Petition Date (other than the loss of the value of her one-third (1/3) interest in the Property as a result of the Second Transfer), the Debtor must have also been insolvent on the date of the Second Transfer.  These facts, as Defendant notes, are insufficient to prove by a preponderance of the evidence that the Debtor's assets exceeded her liabilities at the time of the Second Transfer, or that the Second Transfer caused the Debtor's assets to exceed her liabilities.

First, the Debtor's scheduled assets and liabilities, even coupled with statement that she did not sell, trade or transfer any property to anyone within two (2) years before she filed for bankruptcy, other than property transferred in the ordinary course of her business or financial affairs, does not equate to a finding that the same assets and liabilities scheduled by the Debtor on the Petition Date are the same assets and liabilities that the Debtor had on the date of the Second Transfer.  Instead of citing to evidence regarding the Debtor's actual financial circumstances in June 2015, including both the value of her assets and liabilities at that time, Plaintiff merely infers the Debtor's insolvency on the date of the Second Transfer based upon assertions and disclosures made on the Petition Date, a year and one half (1 ½) after the date we look to for insolvency.[20]

Second, although it could be true that the Debtor's *assets* have not substantially changed from the date of the Second Transfer to the Petition Date,[21] it is not clear from the evidence

---

[20] Although the Discover Account and Wells Fargo Account, fn. 19, *supra*, appear to have existed at the time of the Second Transfer, the proofs of claim for such accounts tell the Court nothing about the amount of those debts on the date of the Second Transfer.

[21] This assumption is similarly unfounded, as it ignores the possibility that the Debtor transferred a material amount of assets in the ordinary course of her financial affairs within two (2) years of the Petition Date.

presented that the Debtor's *liabilities* have remained similarly unchanged. The Trustee cites to two (2) claims (Claim No. 1-1 and Claim No. 5-1, Main Bankruptcy Case) that appear to have existed at the time of the Second Transfer; however, it is still unclear, based on those claims, what the amount of the Debtor's liability was on those claims *on the date of the Second Transfer*. As noted *supra*, insolvency requires a tallying of both the Debtor's assets and liabilities. Thus, even if the Court accepts as true Plaintiff's assertion that the Debtor's assets on the Petition Date are the same as her assets in June 2015, it is still not clear to the Court that the Debtor's liabilities on the Petition Date are the same, or similar to, her liabilities on the date of the Second Transfer. Accordingly, there exists a genuine issue of material fact as to whether the Debtor was insolvent on the date of the Second Transfer, or was rendered insolvent by the Second Transfer.

## IV.    Sanctions & Attorney's Fees

In the Response, Defendant seeks sanctions against Plaintiff, including his attorney's fees, pursuant to Federal Rule of Civil Procedure 16(f)(2), incorporated herein by Federal Rule of Bankruptcy Procedure 7016. Defendant contends that such sanctions are warranted due to Plaintiff's unjustified noncompliance with the Rule 26(f) Report and Defendant's contention that Plaintiff has no basis in law or fact to support this Adversary Proceeding. Defendant also seeks an award of his costs and attorney's fees.

Federal Rule of Civil Procedure 16(f), provides in relevant part as follows:

(f) SANCTIONS.
        (1) In General. On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)–(vii), if a party or its attorney:
                (A) fails to appear at a scheduling or other pretrial conference;
                (B) is substantially unprepared to participate—or does not participate in good faith—in the conference; or
                (C) fails to obey a scheduling or other pretrial order.

> (2) Imposing Fees and Costs. Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses—including attorney's fees—incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 16(f).

Here, Defendant appears to assert that the untimeliness of the Motion for Partial Summary Judgment constitutes unjustified noncompliance with Rule 16, such that Plaintiff is subject to sanctions under Rule 16(f)(2) in the amount of Defendant's attorney's fees and costs. Further, Defendant asserts that Plaintiff's lack of factual and legal support for the claims asserted in this Adversary Proceeding also supports the imposition of sanctions.[22]  In this case, other than the nine (9) day delay to the dispositive motion process, there have been no other allegations to support the imposition of sanctions under Rule 16(f).  Moreover, to the extent the untimely Motion for Partial Summary Judgment constitutes noncompliance with Rule 16, the Court finds that other circumstances exist that make an award of attorney's fees and costs unjust, namely that the Motion for Partial Summary Judgment was only late by nine (9) days and resulted in no real prejudice to Defendant.  Rule 16(f) "imbues the Court with considerable discretion in deciding whether to impose sanctions on the offending party and in determining what form the sanctions should take."  *In re Shea*, 2013 WL 5310582, at *3, (Bankr. D. N.H. Sept. 19, 2013)(quoting *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 5 (1st Cir. 1993))(internal quotations omitted). Accordingly, the Court finds no basis to impose sanctions under Rule 16(f), or to award attorneys' fees and costs at this time.  As noted *supra*, the Court will consider the untimeliness of

---

[22] Such allegations appear to assert forms of conduct sanctionable under Federal Rule of Bankruptcy Procedure 9011, but Defendant has not cited to this Rule nor has he provided support for imposing sanctions under this Rule.

28

the Motion for Partial Summary Judgment in connection with Plaintiff's application for compensation and reimbursement of fees and costs when such application is made.

## CONCLUSION

Based upon the foregoing, the Court finds that genuine issues of material fact exist as to the "interest of the debtor" and "insolvency" elements of Plaintiff's fraudulent transfer claim. Although the Court finds that Plaintiff successfully demonstrated that no genuine issue of fact exists as to the "reasonably equivalent value" element of his claim, Plaintiff must prove *all* of the elements of 11 U.S.C. § 548(a)(1)(B) to prevail at the summary judgment stage.  Consequently, as material facts remain at issue, it is hereby

**ORDERED** that the Motion for Partial Summary Judgment is **DENIED**; and it is further

**ORDERED** that Defendant's request for sanctions is **DENIED**; and it is further

**ORDERED** that the parties are **DIRECTED** to submit proposed consolidated pretrial order pursuant to BLR 7016-2 no later than **twenty-eight (28) days** from the date of entry of this Order.

The Clerk is directed to serve a copy of this Order upon Plaintiff, counsel for Plaintiff, Defendant, and counsel for Defendant.

**[END OF DOCUMENT]**